UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WARREN FRANKLIN JENKINS, II,    :
                                :   NO. 1:04-CV-214
         Plaintiff,             :
                                :   **OPINION AND ORDER**
                                :
    v.                          :
                                :
                                :
MARTY DONINI, <u>et al</u>.,          :
                                :
         Defendants.            :


       This matter is before the Court on Defendants' Motion for
Summary Judgment (doc. 33), Plaintiff's Memorandum Contra
Defendants' Motion for Summary Judgment (doc. 41), and Defendants'
Reply to Plaintiff's Memorandum in Opposition (doc. 42).

**FACTS**

       The instant case stems from a series of events that took
place at the Scioto County Jail (hereinafter "the Jail") in
February 2004 (docs. 33, 41).  The "Fact" section of the Court's
Order provides the basic background of this litigation.  However,
certain circumstances are more fully developed and/or emphasized by
the Plaintiff in his Memorandum in Opposition and are discussed in
more detail in this Order at the appropriate place.  Plaintiff
Warren Franklin Jenkins, II (hereinafter "Plaintiff") was
incarcerated in the Jail from February 6, 2004 until February 10,
2004 for violations of probation (doc. 41).  The probation stemmed

from prior convictions for possession of crack cocaine and grand theft, and Plaintiff had previously spent time in the Jail for twenty or thirty prior arrests (doc. 33).

During his period of incarceration at the Jail in February 2004, Plaintiff claims he was subjected to unlawful, inadequate, and unacceptable jail conditions that resulted in physical injury (doc. 41).  The injuries stem from an altercation that took place during the early morning hours of February 7, 2004 (Id.).  At approximately 1:30 A.M., a group of six to eight inmates began throwing paper wads soaked in urine and toilet water at Plaintiff in his cell (docs. 33, 41).  Although the group of inmates eventually left, they returned approximately ten minutes later and pulled Plaintiff from his bunk (docs. 33, 41).  Plaintiff was beaten unconscious by the inmates despite his yelling for help (docs. 33, 41).  When he awoke, Plaintiff experienced pain in his body and a burning sensation in his anus, which led him to believe that he had also been sodomized (doc. 41).

Plaintiff claims he did not know what to do when he regained consciousness, so he first told his family of the incident (doc. 33).  It is disputed whether Plaintiff reported the incident to the officer-in-charge or if the Jail found out about the incident solely from a call by Plaintiff's mother (docs. 33, 41).  Either way, both parties acknowledge that within ten minutes of Plaintiff's mother's call Plaintiff was removed from his "range" of

the Jail and placed in a holding cell away from all other inmates (docs. 33, 41).

At approximately 12:30 P.M., officers at the Jail began to investigate the incident in question (doc. 41).  Captain Hall (hereinafter "Hall"), Detective Kock, and Andy Rase began interrogating Plaintiff for a few hours despite protest by Warren Jenkins, Sr. that his son be sent to the hospital immediately (Id.).  At approximately 8:00 P.M., Plaintiff was released to his father's custody so that he could be taken to the local hospital and examined by physicians (Id.).  After being checked for sexually transmitted diseases and treated as a rape victim, Plaintiff was returned to the Jail and released a couple of days later (Id.).

Plaintiff alleges that numerous conditions at the Jail contributed to the above-described incident and constituted cruel and unusual punishment in violation of his constitutional rights (Id.).  For example, Plaintiff claims that he and the other inmates at the Jail were detained in cells with doors that did not work (Id.).  According to Plaintiff, the cells doors were kept unlocked to prevent safety and fire hazards, which allowed the inmates to roam freely about the A-range area of the Jail in which Plaintiff was housed (Id.).

Additionally, Plaintiff claims that he did not receive adequate protection while incarcerated because there were no deputies guarding the inmates in the A-range during the night of

3

the incident (Id.). Deputy Scott Warren (hereinafter "Warren"), who worked the 11:00 P.M. to 7:00 A.M. shift the night of the incident stated in an affidavit that the inmates were disruptive and throwing wet toilet paper when he began his shift (Id.). Despite this fact, Sergeant Malone (hereinafter "Malone") ordered Warren to come to the front of the jail to assist Deputy Lawter with the processing of arrestees while Malone left the jail to assist another officer in Kentucky (thus leaving only two officers in the Jail and none in the A-range area) (Id.).

Plaintiff filed his Complaint on March 19, 2005 asserting that Defendants Marty Donini (hereinafter "Donini"), Scioto County, Ohio Sheriff, and the Scioto County, Ohio Sheriff's Department (hereinafter "Sheriff Department") infringed his civil rights in violation of 42 U.S.C. § 1983 (doc. 1). Plaintiff also raises claims based on Ohio state law that the Defendants operated the Jail in violation of Ohio's minimum requirements for jail facilities (Id.). Defendants, in their Motion for Summary Judgment, aver they are entitled to summary judgment because neither they nor the Plaintiff had any notice that the attack in question would occur (doc. 33). In the alternative, Defendants argue that Donini is entitled to qualified immunity and that Plaintiff's claim against the Sheriff's Department must fail for procedural and substantive defects (Id.).

4

**APPLICABLE LEGAL STANDARD**

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions

5

of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**ANALYSIS**

The Eighth Amendment requires correctional officials to provide humane conditions of confinement and "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Farmer further states:

In particular . . . 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.' Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial behavior, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take

6

> its course.  Prison conditions may be 'restrictive and
> even harsh,' but gratuitously allowing the beating or
> rape of one prisoner by another serves no 'legitimate
> penological objectiv[e],' any more than it squares with
> 'evolving standards of decency.'   Being violently
> assaulted in prison is simply not 'part of the penalty
> that criminal offenders pay for their offenses against
> society.'

Id. at 833-34 (internal citations omitted).  Farmer further holds
that a prisoner/plaintiff seeking redress under a "failure to
prevent harm" theory (as Plaintiff asserts in the instant matter)
"must show that he  is incarcerated under conditions posing a
substantial risk of serious harm." Id. at 834 (internal citations
omitted).  ". . . [T]he deprivation alleged must be, objectively,
'sufficiently serious,' . . . a prison official's act or omission
must result in the denial of the 'minimal civilized measure of
life's necessities.'" Id. (internal citations omitted).

     The prisoner/plaintiff must also show that the pain
inflicted was "wanton" and "unnecessary." Id.  The prison official
who violates the prisoner's Eight Amendment rights must act with
"deliberate indifference" to the prisoner's "health or safety."
Id.  Deliberate indifference, in the Eighth Amendment arena, is
defined by the Supreme Court as amounting to "'more than ordinary
lack of due care for the prisoner's interests or safety.'" Id. at
835.  Proving deliberate indifference is tougher when a
prisoner/plaintiff seeks to prove that a prison official,
him/herself, used excessive force than it is when the
prisoner/plaintiff seeks to challenge the conditions of his/her

confinement. Id. In this situation, deliberate indifference is somewhere between negligence and causing harm purposefully with knowledge that harm would result - in other words, the Supreme Court has defined it as "recklessness." Id. at 836.

Yet, the term recklessness requires further interpretation. The Supreme Court states that "recklessness" in Eighth Amendment cases alleging "inhumane conditions of confinement" entails the official "know[ing] of and disregard[ing] an excessive risk to the inmate's health or safety." Id. at 837. Additionally, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The Eighth Amendment also requires that prison officials provide medical care to prisoners. See e.g., Estelle v. Gamble, 429 U.S. 97, 103 (1976). Estelle states:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Id. In other words, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. The Eighth Amendment may also impose

8

liability on government officials, including sheriffs sued in their official capacities, where evidence of a policy or custom of deliberate indifference to serious medical needs of inmates exists. Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1988).

Gomez v. Toledo, 446 U.S. 635 (1980), holds that to state a claim under Section 1983 (which is the statutory vehicle for an Eighth Amendment claim), a plaintiff must prove: (1) that the defendant deprived him of a right secured by the Constitution or laws of the United States and (2) that in so doing, the defendant acted under color of state law. Gomez at 640. The Court notes that municipal liability, pursuant to 42 U.S.C. § 1983, cannot be found based on the doctrine of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978). To find municipal liability, which in the instant matter would be liability on the part of Sheriff's Department, a plaintiff has two possible routes.

First, the plaintiff can establish that an unconstitutional policy statement, ordinance, regulation, or decision was formally adopted and promulgated by the governing body or department thereof. Id. Second, Monell allows the imposition of governmental liability where the challenged conduct reflects "practices of state officials so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell at

9

691.  The policy maker may have either actual or constructive knowledge of the practice or may simply acquiesce in the unconstitutional custom or practice for liability to attach.  See e.g., Memphis, Tennessee Area Local, American Postal Workers Union v. City of Memphis, 361 F.3d 898, 902-03 (6th Cir. 2004); Miller v. Calhoun County, 408 F.3d 803, 814 (6th Cir. 2005) .  Furthermore, acts of omission as well as commission, may serve as the predicate for a finding of unconstitutional policy or custom.  See e.g., Doe v. Claiborne County, 103 F.3d 495 (1996) (calling such an attachment of liability the "inaction theory").  In Doe, the Sixth Circuit held:

> To state a municipal liability claim under an "inaction" theory, . . . [the plaintiff] must establish: (1) the existence of a clear and persistent pattern . . . [of unconstitutional activity by the municipal employees] . . .; (2) notice or constructive notice on the part of the . . . [municipality]; (3) the . . . [municipality's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the . . . [municipality's] custom was the "moving force" or direct causal link in the constitutional deprivation.

Doe at 508 (internal citations omitted).  The official policy must be adopted by someone "with final authority to establish municipal policy with respect to the action ordered."  Pembauer v. Cincinnati, 475 U.S. 469, 481 (1986).

Under the above referenced legal landscape, the Defendants argue that (1) Plaintiff was not aware of any potential danger while incarcerated in February 2004 and (2) Donini had no

notice that Plaintiff would be assaulted; accordingly, the Defendants urge the Court to grant their Motion for Summary Judgment (doc. 33). The Defendants submit additional arguments supporting their Motion, which the Court will address in due course. However, the Court first turns to the two above reference arguments.

First, Defendants note that Plaintiff had been incarcerated in the Jail approximately twenty to thirty times prior to his incarceration in January 2004 and that during none of these prior visits to the Jail did Plaintiff experience similar problems with the inmates as the Plaintiff alleges he did in February 2004 (Id.). Any problems with fellow inmates prior to February 2004, Defendants aver, were due to the Plaintiff's own negative conduct, such as confrontational behavior and general unkemptness (Id.). Defendants point to Plaintiff's deposition testimony in which he indicated he had no warning that he would be attacked in the manner that he was while incarcerated in February 2004 (Id.). Defendants highlight that upon Plaintiff's arrival to the Jail in February 2004, he requested but was denied separation from the general population in what is termed the "work release range" (Id.). Despite the Jail's denial, Plaintiff did not send a grievance to any supervisory staff in the jail for review of said denial (Id.). For the first two days of his incarceration in February 2004, Plaintiff did not experience any difficulty with other inmates nor

had Plaintiff heard of any occurrences of similar problems at the Scioto County Jail (Id.). As Plaintiff had no evidence that he faced any type of threat of harm, Defendants contend that his claims must fail (Id.).

Second, Defendants argue that Plaintiff has presented no evidence that Donini knew that Plaintiff would be assaulted in February 2004 during his incarceration (Id.). Plaintiff had no communication with Donini during the first few days that he was in the Jail during February 2004 (Id.). In fact, note Defendants, Plaintiff never spoke to Donini (Id.). Therefore, in his individual capacity, Defendants maintain that Donini cannot be held liable as no evidence exists to believe that Plaintiff was in danger while in the Jail (Id. citing Farmer at 847).

Plaintiff, in response to Defendants' arguments, highlights the following:

1. Plaintiff was not involved in any altercations or disciplined prior to the incident in question while incarcerated at the Jail (Id.).

2. Plaintiff was incarcerated in the Jail, under the direction and supervision of Donini, from February 2, 2005 until February 10, 2004 (Id.).

3. During this period, Plaintiff as well as other inmates were detained in cells with doors that did not work, preventing the locking at times of the doors to cells (Id.).

4.  On the night of the incident, only three Jail officers were working (Id.).

5.  Officer Warren acknowledged that the shift started out loudly, with the inmates throwing wet toilet paper and generally being disruptive, all in contrast to Defendants' assertion that there was no warning of trouble on the night of the incident (Id.).

6.  Defendants do not dispute that in the early morning hours of February 7, 2004, an altercation occurred involving several inmates (Id.). Plaintiff was assaulted during this altercation and was hit with water, urine and urine soaked toilet paper (Id.). Plaintiff maintains that this was a part of a continued, non-stop harassment of him by a group of inmates (Id.).

7.  As noted above, Plaintiff avers that he was beaten and raped by these inmates (Id.).

8.  According to Officer Warren, Plaintiff screamed for help for a length of time, but no jailer or other official came to Plaintiff's aid (Id.). Also, according to Officer Warren, the range where Plaintiff was housed in the jail was "wide open, with all the cell doors unlocked" with no officer on duty (Id.).

9.  After Plaintiff regained consciousness, he claims he did not know what to do and that he feared for his life (Id.). At

13

9:00 A.M., he contacted his family and notified his mother of the incident (Id.). Plaintiff also claims that he reported the incident to the officer in charge that morning (Id.). Plaintiff notes that Defendants deny Plaintiff notified the officer in charge of the incident (Id.). However, Plaintiff maintains that within ten minutes of his call to his mother, he was removed from his "cell range" and placed in a holding cell while his allegations were investigated (Id.). The Plaintiff questions why, if he did not report the incident, did Defendants remove him from his cell range, place him in a holding cell, and begin to investigate the allegations?

10. In any event, the Plaintiff questions why, despite repeated telephone calls by his mother to the Jail, no record of an investigation exists beginning before 12:30 P.M., more than three hours after his mother began making phone calls (Id.).

11. The Plaintiff's father, once he visibly assessed Plaintiff's injuries (i.e., a swollen face and a bruised body), insisted that his son be sent to the hospital (Id.). Those requests were reportedly ignored and instead, Defendants continued to interrogate Plaintiff for hours in an attempt to force Plaintiff to change his statement (Id.). Plaintiff's father reports that he heard the jail officials badgering and threatening his son for over an hour (Id.). Eventually, Plaintiff's father interrupted the interrogation and insisted

14

that Plaintiff be taken to the hospital (Id.).

12. Plaintiff contends that approximately seventeen hours after the assault and approximately eight hours after Donini, himself, advised jail personnel of the assault was Plaintiff released to his father's custody so that he could obtain medical care (Id.). Plaintiff submits that he spent over two hours at the hospital, where he was x-rayed, checked for sexually transmitted diseases, and treated as a rape victim (Id.). Plaintiff questions why his father was permitted to take him to the hospital when that is the Jail's responsibility.

13. Plaintiff maintains that the Jail was consistently overcrowded and understaffed (Id.). Furthermore, Plaintiff avers that inmates were permitted to roam freely through the Jail, subjecting inmates to substantial risk of injury (Id.). Plaintiff notes that the Jail has a rule requiring all inmates to be locked-up when no deputy is in the area (Id.).

It is these circumstances, argues Plaintiff, that establish Defendants incarcerated him with deliberate indifference under conditions posing a substantial risk of serious harm (Id.). The Court agrees with Plaintiff that being beaten and raped by other inmates while incarcerated in a county jail most assuredly amounts to serious harm. The question of paramount importance is whether the Court finds genuine issues of material fact present as

15

relates to the requirement of "deliberate indifference." The Court finds that indeed such genuine issues of material fact are present, necessitating ultimate disposition by a trier of fact.

Officer Warren testified in deposition testimony that the inmates were disorderly upon arriving for his 11:00 P.M. to 7:00 A.M. shift. Accordingly, the Jail had notice that conditions within the Jail on the evening of the incident were more chaotic than usual. It is undisputed that an altercation occurred and that Plaintiff cried out for help, yet no aid from a Jail official was rendered. Furthermore, Officer Warren's testimony indicates that the "range" in which Plaintiff was housed was left unattended and the doors to the cells unlocked. These two facts the Court finds especially troubling as unlocked cell doors in unattended areas of a jail make an environment susceptible to disorder, damage and potential injury.

The Court finds that a "reasonable jury could return a verdict for the [Plaintiff]." Anderson at 248. The above noted circumstances (i.e., unlocked cell doors, unattended areas of the Jail, and less arguably recklessness in avoiding known hazardous conditions) could lead a jury to determine that the Jail did not "take reasonable measures to guarantee the safety of the [Plaintiff]." Farmer at 832. Furthermore, a reasonable jury might very well find that this is "objectively" and "sufficiently serious" to warrant the type of deprivation contemplated by the

16

Eighth Amendment. <u>Id</u>. at 834. Additionally, genuine issues of material fact exist that could lead the jury to conclude that this type of behavior is something more than "ordinary lack of due care for [Plaintiff's] interests or safety", amounting to at least recklessness. <u>Id</u>. at 834.

Finally, the Court finds that genuine issues of material fact exist concerning the Jail's response to Plaintiff's injuries. Genuine issues of material fact exist as to whether the Jail acted with deliberate indifference by "intentionally . . . delaying [Plaintiff's] access to medical care . . ." Plaintiff maintains that he was refused medical treatment for at least eleven hours, despite physical manifestations of abuse and concerns repeatedly voiced by the Plaintiff's family (<u>i.e.</u>, his father). This fact alone could lead a reasonable jury to conclude that Plaintiff was denied appropriate medical treatment in violation of the Eighth Amendment.

Furthermore, the Court finds as a matter of law that Donini "is the final policy-making authority with respect to county jail operation." <u>See</u> <u>Orr v. Trumbull County</u>, 77 F. Supp. 2d 853, 857 (N.D. Ohio 1999) <u>citing</u> Ohio Rev. Code § 307.021(A). Genuine issues of material fact exist as whether a "policy of inaction," as contemplated in <u>Doe</u>, existed within the jail as it relates to leaving cell doors unlocked and the ignoring of inmate's medical needs. These alleged conditions are further elaborated upon below

17

in this Court's Order.  The Courts concludes that a reasonable jury could so conclude.  As such, summary judgment in favor of the County is not appropriate.

Even if the Court were to find that Summary Judgment was inappropriate on the merits of Plaintiff's failure to protect claim, the Defendants argue that Donini is entitled to qualified immunity (doc. 33).  Qualified immunity is a long-standing doctrine that provides officials "immunity from [the indignities of] suit rather than a mere defense to liability."  Saucier v. Katz, 533 U.S. 194, 200-201 (2001).  In sum, it protects officials from being held liable for violations of constitutional rights they did not know existed due to a lack of a previous pronouncement by a court recognizing the particular right in question.  Under Supreme Court precedent, determining whether an officer/official is entitled to qualified immunity is a two-step process.

First, the Court must ascertain whether the officer's/official's alleged conduct violated a constitutional right.  See Chavez v. Martinez, 538 U.S. 760, 766 (2003); Saucier, 533 U.S. at 201.  In other words, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If it does not, then the inquiry is at an end: the officer/official is entitled to qualified immunity from suit.  See Chavez, 538 U.S. at 766; Saucier, 533 U.S. at 201 ("If

18

no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

If, however, the complained-of conduct would violate one or more of the plaintiff's constitutional rights, a second inquiry is required: The Court must ascertain whether the particular right allegedly violated was clearly established at the time the violation occurred. Saucier, 533 U.S. at 201. The Supreme Court has, however, circumscribed the scope of the review of this issue:

> This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.
>
> [W]e emphasized in Anderson "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Saucier, 533 U.S. at 201-202 (internal citations omitted); see also Wilson v. Layne, 526 U.S. 603, 615 (1999)("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

The Supreme Court has recognized the doctrine of

qualified immunity in Section 1983 cases (<u>Greene v. Reeves</u>, 80 F.3d 1101, 1104 (6th Cir. 1996)).  As noted above, the Court finds that a reasonable jury could find that a constitutional right of the Plaintiff was violated.  Accordingly, the Court must turn to the second inquiry of the qualified immunity analysis - namely, "whether it would be clear to . . . [Donini] that his conduct was unlawful in the situation he confronted." <u>Saucier</u> at 202.  The Defendants argue that the premise of Plaintiff's claim is that Donini knew that inmates would attack the Plaintiff in the course of a wet paper wad fight (doc. 33).  Defendants aver that Donini had no knowledge that this attack would occur and; as such, he cannot be held liable for "conduct [that] was unlawful in the situation he confronted." <u>Saucier</u> at 202.

Plaintiff responds noting that the rights of prisoners to have adequate medical attention and treatment is clearly established as ia the right to be free from cruel and unusual punishment (doc. 41).  The Plaintiff argues that disorderly conduct on the part of the prisoners before the beating and the rape of the Plaintiff should have alerted the jailers of the potential for altercations between the prisoners (<u>Id</u>.).  Furthermore, Plaintiff submits that the practice of jailers leaving inmates unattended with doors to cells unlocked, is so egregious as to constitute reckless, deliberate indifference to the safety of th inmates (<u>Id</u>.).  Plaintiff also claims that the Jail's lack of concern

20

towards his health and safety (evidenced by the delay in seeking medical attention for Plaintiff) is typical conduct for the jail (Id.).

Clearly, Donini was aware of Plaintiff's medical condition, post the altercation. Hall noted in his "Case Investigation Report" that he received a page from Donini concerning the altercation and the alleged, resultant injuries suffered by Plaintiff (Id.). Plaintiff has also attached to his Opposition Memorandum more than twenty "Scioto County Jail Prisoner Grievance Forms," completed by inmates other than Plaintiff, dating from 2000 onward, in which the inmates complain of a lack of medical attention (Id.). Furthermore, a document from 1997 (from the then Scioto County Sheriff) requests that all jailers are to lock all cells when leaving inmates alone in an area of the Jail (Id.). These facts tend to highlight that Donini should have been on notice that (1) a lack of medical attention was a common complaint made by inmates of the Jail and (2) that leaving cell doors unlocked fostered dangerous conditions within the Jail.

As such the Court finds that Donini is not entitled to qualified immunity. It cannot be disputed that the complained of conduct would amount to a violation of Plaintiff's constitutional rights. Furthermore, the "contours" of these constitutional rights - freedom from cruel and unusual punishment and access to medical treatment - were sufficiently established at the time of the

21

incident that Donini should have known that his conduct violated these rights. The conduct that a reasonable jury could find Donini fostered and promoted was a Jail where inmates' cells were left unlocked, tending to increase the chance of violence among inmates and a pattern of ignoring or delaying medical treatment which inmates requested and needed.

Defendants argue additionally that Plaintiff's claim against Defendant "Scioto County Sheriff Department/Scioto County, Ohio" must fail for procedural and substantive defects (doc. 33). Quoting from a previous order of this Court, Barrett v. Wallace, 107 F. Supp. 2d 949 (S.D. Ohio 2000), for the proposition that a sheriff's department is not a legal entity and, thus, not amenable to suit. Id. at 954-955. This Court in Barrett stated, "[p]laintiff specifically named the Warren County Sheriff's Office in the caption of his Complaint . . . the record reveals that [p]laintiff has never submitted a motion to amend or an amended complaint to correct this procedural error." Given this Court's ruling in Barrett, the Defendant concludes that this Court must dismiss this matter as against the Sheriff's Department (doc. 33).

Plaintiff responds highlighting that "Scioto County" is specifically named as a Defendant (doc. 41). Plaintiff claims that Defendants' argument on this issue is frivolous and that it is undisputedly Scioto County which is sued and identified in the Complaint (Id.). Furthermore, Plaintiff notes that the Scioto

22

County Commissioners were served (Id.). The Court agrees with Plaintiff. Accordingly, Defendants' argument is not well-taken.

**CONCLUSION**

In conclusion Defendants' Motion for Summary Judgment is DENIED as the Court finds that genuine issues of material fact exist necessitating a determination by the trier of fact. As such, Plaintiff's Section 1983 Claims against Donini and Scioto County remain. The Court SCHEDULES a Settlement Conference in this matter for February 1, 2006 at 2:00 P.M., a Final Pre-Trial Conference for March 9, 2006 at 9:00 A.M., and a Three-Day Jury Trial to commence April 11, 2006.


SO ORDERED.


Dated: January 11, 2006        s/S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge